IRVING, J.,
for the Court.
¶ 1. The Hinds County Chancery Court of the First Judicial District held James E. Pittman in contempt for failure to comply with a court order in which he had been mandated to complete the construction of his home in the Fairwood Subdivision in the City of Jackson by a certain date. Pittman, operating pro se, now appeals and asserts that the trial court erred in holding him in contempt, in ordering him to pay attorneys fees to the Lakeover Homeowners Association (Lakeover), and in ordering him incarcerated until he paid all ordered amounts.
We find that the chancellor erred in finding Pittman in contempt. Consequently, we reverse and render the judgment of the chancery court.
FACTS
¶ 2. James E. Pittman purchased # 2 Berrywood Cove, Lot 24 in Fairwood Subdivision in the City of Jackson and submitted site plans to Underwood Development Company for approval in accordance with the requirements of the protective covenants covering the subdivision. The plans were not approved by Underwood because of some slight irregularities. Underwood advised Pittman of the reason why the site plans initially could not be approved and directed Pittman to send new plans to Lakeover since Underwood was assigning the architectural control responsibility for the Fairwood Subdivision to Lakeover. Lakeover then sent a letter to Pittman in which it advised Pittman of what must be done to bring his proposed site plan in compliance with the protective covenants. Lakeover also requested that Pittman provide it with a “start and completion date.”
¶ 3. After receiving the letter from Lakeover, Pittman advised Lakeover that the proposed construction complied with the Southern Building Codes and the City of Jackson Building Code Division requirements and that Lakeover did not have the authority or legal right to issue building permits. He further advised that he was no longer concerned with any comments or suggestions that Lakeover might offer. Armed with a building permit from the City of Jackson, Pittman then began construction of his home on the lot in April 2000.
¶ 4. In June 2000, Lakeover filed a complaint for declaratory and injunctive relief in the Hinds County Chancery Court. Pittman filed a counterclaim for abuse of process and a motion to dismiss for failure to state a claim upon which relief could be granted or, in the alternative, motion for summary judgment. A hearing was held on the motion to dismiss. However, this hearing was adjourned to be reset, but the hearing was never reset.
¶ 5. A hearing on the motion for declaratory and injunctive relief was held on April 18, 2002, and Pittman was ordered to complete construction of the house by December 31, 2002. The chancellor granted declaratory relief in favor of Lakeover holding that Lakeover had the authority and oversight of architectural control over development and construction of all homes *1229 in the subdivision conferred upon it by the protective covenants assigned to it by Underwood Development Company. The chancellor denied injunctive relief to Lake-over and denied Pittman’s counterclaim for abuse of process.
¶ 6. On March 21, 2003, Lakeover filed a petition for citation for contempt for Pittman’s failure to complete the construction as ordered. The chancellor found Pittman in contempt and ordered him to pay attorney fees, court costs, and a daily penalty of $25 per day for each day the construction remained incomplete from December 31, 2002, to August 18, 2003, which equaled $5,600. Pittman was also ordered to pay $1,200 for attorney fees on the issue of contempt and court costs. The trial court ordered Pittman incarcerated until the $6,800 was paid. The chancellor’s order did not state to whom the $5,600 would be paid.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 7. “[F]indings of a chancellor will not be disturbed when supported by substantial evidence unless the chancellor abused his discretion, applied an erroneous legal standard, was manifestly wrong, or was clearly erroneous.” Hamilton v. Hopkins, 834 So.2d 695(1112) (Miss.2003). “The standard of review for a citation for contempt is determined upon the facts of each case and is a matter for the trier of fact.” Jones v. Jones, 878 So.2d 1061, 1064(114) (Miss.Ct.App.2004) (citing Milam v. Milam, 509 So.2d 864 (Miss.1987)). A citation for contempt is proper when “the contemnor has willfully and deliberately ignored the order of the court.” Id. (quoting Bredemeier v. Jackson, 689 So.2d 770, 777 (Miss.1997)).
¶ 8. Pittman argues that the chancellor treated him unfairly in holding him in contempt for failing to complete the construction of the house by the December 31, 2002 deadline, in requiring him to pay Lake-over’s attorney fees, and in ordering him incarcerated without bail until all fees were paid. Pittman contends that the trial judge was bias and unfair because the judge failed to consider the fact that he lost his job in January of 2001 and remained unemployed until June of 2003. Pittman maintains that the lack of income and employment slowed down the completion of the house.
¶ 9. Lakeover counters that the protective covenants’ requirement of architectural control was a reasonable restriction. The protective covenant provides:
Underwood Development Company retains for itself, its successors or assigns, the right of absolute architectural control including site plan approval. The intent of this clause is to permit Underwood Development Company, its successors or assigns to control the compatibility of architectural design of improvements or reject all plans and building specifications prior to the start of construction.
¶ 10. Lakeover maintains that there was no abuse of discretion by the trial judge because Lakeover had an absolute right to architectural control pursuant to the protective covenants, and Pittman violated the protective covenants by starting construction on the house without approval.
¶ 11. The chancellor ordered that Pittman complete the house by December 31, 2002. A review of the protective covenants in question reveals that there is no provision that gives Lakeover the authority to require a specific start and completion date for any construction covered by the covenant. In cases which involve the power of a chancellor to modify a writing, the Mississippi Supreme Court has stated that “[cjourts do not have the power to *1230 make contracts where none exist, nor to modify, add to, or subtract from the terms of one in existence.” Griffin v. Tall Timbers Development, Inc., 681 So.2d 546, 555 (Miss.1996) (quoting Glantz Contracting Co. v. General Elec. Co., 379 So.2d 912, 916 (Miss.1980)).
¶ 12. “The power of the chancellor to substitute his own judgment for that found in the original covenant, or the power of the court of equity, when considering the validity of covenants or bylaws, to alter the substance of a writing is not reflected in the case law of this or any other jurisdiction brought to the attention of this Court.” Griffin, 681 So.2d 546 at 555. Accordingly, we find that the chancellor had no authority to set a date for the completion of Pittman’s home since there was no provision in the protective covenants that gave Lakeover the authority to set a deadline for the completion of homes in the subdivision. Therefore, it follows that if the chancellor did not have the authority, relying upon the provisions of the covenants, to set a completion date, she had no authority to impose sanctions when the completion date was not complied with.
¶ 13. It should be noted that Pittman complied with the requirements of the protective covenants regarding the setback requirements for the new construction, and it was not alleged that the house as constructed violated any setback provisions or any other provisions other than the implicit provision that the site plans be submitted for approval prior to construction. Further, we observe that Pittman was not held in contempt for failing to submit site plans to Lakeover. Finally, we observe that Lakeover did not allege that the partially finished house constituted a public nuisance, justifying the intervention of the court to abate the nuisance.
 ¶ 14. Even if we were to- find that the chancellor did have the authority to set a time line for the completion of the house, there is no evidence in the record which indicates that Pittman willfully failed to complete construction of the house as ordered by the chancellor. Pittman contends that because he was unemployed and had no income, there was no way of borrowing funds from any lending institution in order to complete construction of the house. The Mississippi Supreme Court has held that a “defendant may show that he is not guilty of wilful or deliberate violation of the prior judgment” as a defense to a citation for contempt. Newell v. Hinton, 556 So.2d 1037, 1044 (Miss.1990). If a prima facie case of contempt has been established, the defendant may still avoid a citation for contempt by showing that he has no “present ability to discharge his obligation.” Id.
¶ 15. There is an abundance of evidence in the record which indicates that Pittman could not afford to complete the house by the date ordered by the chancellor. The record indicates that Pittman lost his $55,000 per year job in January of 2001 and remained unemployed until June of 2003. Pittman was reemployed in June 2003 as a night auditor with a hotel where he received $8.25 per hour with a biweekly gross pay of approximately $660 which is substantially lower than his previous salary of $55,000 per year. Pittman also had biweekly child support obligation of $220. Pittman maintains that with his present income and child support obligations, it was impossible for him to complete the house by December 31, 2003, as ordered by the chancellor.
¶ 16. The chancellor found that Pittman “had the ability to pay and has the ability to pay.” It is unclear whether the chancellor was referring to the ability to pay the penalty and attorneys fees or the abili *1231 ty to pay for the timely completion of the house. As we have already stated, there is no evidence in the record supporting such a finding as it relates to Pittman’s ability to pay for the timely completion of the house. The record does not reveal whether the construction of the house was financed by a loan from a financial institution or whether it was financed by Pittman from his personal funds. Nevertheless, based on the record, we find that the chancery court manifestly erred in holding Pittman in contempt for failure to complete the construction of the home by a court-imposed deadline.
¶ 17. JUDGMENT OF THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HIND COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P JJ., BARNES AND ISHEE, JJ. CONCUR. GRIFFIS, J., CONCUR IN RESULT ONLY. MYERS AND CHANDLER, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.